MARSH, APPELLEE, *v.* THE COMMUNITY TRACTION CO., APPELLANT.

(Decided May 31, 1938.)

*Mr. Isadore Kohler* and *Mr. Chester A. Meck,* for appellee.

*Messrs. Welles, Kelsey, Cobourn & Harrington,* for appellant.

CARPENTER, J.. This was an action for damages for personal injuries sustained by the plaintiff about 8:30 p. m., December 26, 1936, when the automobile in which he was riding collided with a bus of the defendant at the intersection of Heston street and Indiana avenue in Toledo. The automobile was owned and driven by Garnett Adams north on Heston street. The bus was going west on Indiana avenue, which was a main thoroughfare. The verdict and judgment were for the plaintiff in the sum of $9,000. From this judgment defendant appealed on questions of law.

Three errors are assigned and urged here: Two relate to the charge of the court in that (a) the charge was that Section 7249, General Code, governed the speed of the bus, and appellant claims it should have been Section 12603, General Code, and (b) the court told the jury that the negligence of Adams in driving the automobile could not be imputed to the plaintiff; the appellant claims they were engaged in a joint enterprise. The third error assigned relates to the verdict and it is urged that it (a) is manifestly against the weight of the evidence as to amount, and (b) is so much so that it appears to have been given under the influence of passion and prejudice.

The bus, both because it was on a main thoroughfare and the automobile was not, and because it was approaching the intersection on the right of the automobile, is conceded to have been entitled to the right of way through the intersection, provided it was proceeding "in a lawful manner." Sections 6310-28, 6310-28a, 6310-30 and 6310-31, General Code. To determine whether it was so proceeding makes the law controlling the speed of the bus an important consideration.

The estimates of the various witnesses as to the rate of speed at which the bus was traveling at the time of the collision vary from eighteen to forty miles per hour.

The material part of Section 7249, General Code, is as follows:

"No commercial cars of the kind and weights enumerated in this section, shall be operated in the business and closely built up portions of a municipality or in any other portions thereof, or outside of municipalities at a greater rate of speed than is reasonable and proper having regard for the width, traffic, use and the general and usual rules of such road or highway. A greater rate of speed than the following

shall be *prima facie* evidence of a rate of speed greater than is reasonable and proper for general safety and the protection of the roadway.    *   *   *

"5. For vehicles equipped with pneumatic tires designed for the transportation of persons, fifteen miles an hour in the business or closely built up portions of municipal corporations, twenty miles an hour in other portions of cities   *   *   *."

It should be noted here that this section has always had a penal provision, Section 13421-17, General Code, thereby making it a part of the penal law.

For the definition of the term "commercial cars" as used here, we look to Section 6290, General Code, which says:

"Definition of terms, as used in this chapter and in the penal laws, except as otherwise provided:   *   *   *

"6. 'Commercial car' means any motor vehicle having motor power designed and used for carrying merchandise or freight, or for carrying more than seven persons, or used as a commercial tractor."

The evidence shows that defendant's bus had a passenger capacity of twenty-nine persons, and was being used at the time in question on one of its regular passenger-carrying lines in the city of Toledo—hence the bus was a "commercial car" within the terms of this statute.

But it is urged that Section 7249, General Code, is not a speed statute for the protection of travelers on the highway, but only has reference to the protection of the roadway. It is also urged that Section 12603, General Code, has been re-enacted since Section 7249, and impliedly repeals it as a general speed statute, if it was ever so intended, and that now the speed of all motor vehicles is governed by Section 12603, General Code.

To determine this contention requires an examination of some of the legislative history of Sections 6290, 7249 and 12603, General Code.

When Section 12603, General Code, was first enacted in 1908 (99 Ohio Laws, 541) the first sentence was in much the same terms it is now, and from then through its various amendments to the present time, the "reasonable and proper" test of speed has been retained, and for some time, probably to 1923, it no doubt governed the speed of all types of motor vehicles.

In 1917, Section 7249 was first enacted and its penal provision, Section 13421-17, General Code, was amended (107 Ohio Laws, 140 and 141). In 1921 (109 Ohio Laws, 548) it was amended, but in the form it took in both of these enactments it seems to have been intended entirely for the protection of the roadway from excessive speed of heavy vehicles. But on April 4, 1923, it was again amended (110 Ohio Laws, 321) and the first paragraph was made exactly as it is at present, and above quoted, and it has been in that form ever since. From Section 12603 it took the expression "reasonable and proper," the expression "for general safety" was added to it, and also some subdivisions describing particular classes of commercial cars and fixing different speed limits for the different classes. In 1925 (111 Ohio Laws, 242) there was added to Section 7249 what is now subsection 5, providing rates of speed for vehicles "for the transportation of persons."

On the following day, April 5, 1923, after making the above noted amendment to Section 7249, in another act (110 Ohio Laws, 135) the same Legislature amended both Sections 6290 and 12603. The former continued the initial sentence making its definitions apply to the terms as used in that "chapter and in the *penal laws*," and this has since continued to the present time in all its numerous subsequent amendments, as have substantially its definitions of the terms "motor vehicle" and "commercial car." (Italics ours.)

In that amendment to Section 12603, the speed rates were increased and the expression *"prima facie* evi-

dence" was substituted for "presumptive evidence" of a speed greater than is reasonable and proper.

Whatever may have been the previous legislative intent with reference to the purpose of Section 7249, when the same Legislature on successive days amended both it and Section 12603, and added to the former the "general safety" provision, it is manifest that it intended to make Section 7249 a "general safety" statute for the protection of the public as well as "the roadway," and that it intended to limit the rates of speed for the classes of "commercial cars" therein enumerated differently from "motor vehicles" in general, as provided for in Section 12603.

In 1929 (113 Ohio Laws, 283) Section 12603 was again amended and again in 1937 (117 Ohio Laws, 398) to its present form. The "*prima facie*" speed rates were increased, the "reasonable and proper" test was retained in a little different setting and the "assured clear distance ahead" provision was added, but in view of the apparent purpose to set apart from this general section the classes of vehicles described in Section 7249 as expressed in 1923 and 1925, and no specific mention to the contrary being made in 1929, an assumption that Section 7249 was then repealed by implication is not warranted. This being true, it is by that section that the lawfulness of the speed of defendant's bus must be determined.

From unofficially reported opinions it appears that several Courts of Appeals have decided that Section 7249 controls the speed of trucks, and no case to the contrary has been pointed out.

The defendant complains because the trial court, in the charge, read to the jury Section 7249, but did not instruct specifically that this collision occurred in a section of the city outside of the business or closely built up portions. This was no more than an omission of what might have been added to an otherwise correct charge, and if the defendant desired such

addition it should have expressly requested it. This was not done.

The errors assigned as to the charge in respect to speed of the bus are not sustained.

The evidence shows that at the time of the collision plaintiff and Adams were on the way down town. Adams, who was not as familiar with the streets of Toledo as plaintiff, was driving his own automobile, and as they approached Indiana avenue plaintiff mentioned to Adams that it was a "stop" street, and when they got to it, plaintiff looked both ways for approaching traffic and he and Adams both saw the bus a half block away. After they got into the intersection and plaintiff saw that they were about to be hit by the bus he said "look out."

In this conduct these men were not engaged in a joint enterprise in the operation of the automobile as that relation is described in *Bloom* v. *Leech, Admr.*, 120 Ohio St., 239, 166 N. E., 137. Plaintiff was doing no more than informing the driver about the streets and exercising some care for his own safety. He did not undertake to tell Adams how to drive the automobile. Under the circumstances, the charge that Adams' negligence, if he was negligent, could not be imputed to plaintiff was proper.

It is undisputed that, besides some slight minor injuries, plaintiff sustained a fracture of the lateral mass on the left side of the fifth cervical vertebra; that his head, neck and body to his hips were in a plaster cast for ten weeks or more; that he was not able to work at his trade as a truck mechanic for twenty-nine weeks; that his loss of wages and medical and hospital expenses were about $1,000; and that he was then twenty-four years old, married and had one child. He says his neck still pains him at times and that he has some limitation in his ability to turn his head, which interferes with many of his movements in

his work. There is a dispute in the medical evidence whether this condition will be permanent.

The only evidence claimed to indicate that the verdict for $9,000 was influenced by passion and prejudice is the size of the verdict. While it may seem high, under this state of the evidence, this court cannot say either that it was influenced by passion and prejudice, or that it was manifestly against the weight of the evidence.

Finding no prejudicial error in the record, the judgment is affirmed.

*Judgment affirmed.*

LLOYD and OVERMYER, JJ., concur.